UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TAMSIN WOLF,

                                    Plaintiff,

                  vs.

TIME WARNER INC.,

                                    Defendant.

09 Civ. 6549 (RJS)

ECF CASE

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE
AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(b)(6)**

Katherine B. Forrest
CRAVATH, SWAINE & MOORE LLP
 Worldwide Plaza
  825 Eighth Avenue
   New York, NY 10019
    (212) 474-1000
     kforrest@cravath.com

*Counsel for Time Warner Inc.*

November 6, 2009

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ........................................................................................3

ARGUMENT ............................................................................................................9

I.     THE MAJORITY OF WOLF'S FEDERAL DISCRIMINATION
       CLAIMS ARE TIME-BARRED ..................................................................9

II.    WOLF HAS NOT ALLEGED FACTS SUFFICIENT TO STATE A
       PLAUSIBLE ADEA OR TITLE VII DISCRIMINATION CLAIM. ...............12

       A.     Wolf's Discrimination Claims Are Belied By the Circumstances of
              Her Employment. .............................................................................14

       B.     Wolf's Conclusory Allegations Cannot Support Her Claims. ...............15

       C.     Wolf's Discrimination Claims Should Be Dismissed Because Her
              Remaining Factual Allegations Do Not Plausibly Support an
              Entitlement to Relief. .......................................................................17

       D.     Even If All Factual Allegations In the Amended Complaint Are
              Considered, They Do Not Support A Plausible Claim for Relief. ..........19

III.   PLAINTIFF HAS NOT ASSERTED FACTS SUFFICIENT TO STATE
       A PLAUSIBLE RETALIATION CLAIM ....................................................23

IV.    PLAINTIFF'S NEW YORK CITY-BASED DISCRIMINATION
       CLAIMS SHOULD BE DISMISSED .........................................................25

CONCLUSION .....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Achtman v. Kirby, McInerney & Squire, LLP,
 464 F.3d 328 (2d Cir. 2006)..............................................................................15

Adams v. Lafayette College,
 2009 WL 2777312 (E.D. Pa. Aug. 31, 2009) ...................................................14

Ansell v. Green Acres Contracting Co., Inc.,
 347 F.3d 515 (3d Cir. 2003)..............................................................................15

Ashcroft v. Iqbal,
 129 S. Ct. 1937 (2009)............................................................................ *passim*

Bailey v. Synthes,
 295 F. Supp. 2d 344 (S.D.N.Y. 2003)...............................................................10

Baptiste v. New York City Transit Auth.,
 2004 WL 626198 (S.D.N.Y. Mar. 29, 2004) ...................................................15

Barcher v. New York Univ. School of Law,
 993 F. Supp. 177 (S.D.N.Y. 1998).....................................................................25

Bell Atl. Corp. v. Twombly,
 550 U.S. 554 (2007)..............................................................................12, 15

Bennett v. Watson Wyatt & Co.,
 136 F. Supp. 2d 236 (S.D.N.Y. 2001).........................................................18, 21

Brown v. Henderson,
 257 F.3d 246 (2d Cir. 2001)..............................................................................13

Clark County Sch. Dist. v. Breeden,
 532 U.S. 268 (2001)..........................................................................................25

Cooperman v. Solil Mgmt., Inc.,
 2000 WL 16929 (S.D.N.Y. Jan 11, 2000) .......................................................14

Cretella v. Liriano,
 633 F. Supp. 2d 54 (S.D.N.Y. 2009).................................................................25

Davison v. NYC Transit Auth.,
 2008 WL 3334078 (E.D.N.Y. Aug. 8, 2008).....................................................9

# TABLE OF AUTHORITIES

**Page(s)**

Diaz v. Weill Medical Ctr. of Cornell Univ.,
   2004 WL 285947 (S.D.N.Y. Feb. 13, 2004)....................................................................16

Fairbrother v. Morrison,
   412 F.3d 39 (2d Cir. 2005)..............................................................................................14

Fowler v. UPMC Shadyside,
   578 F.3d 203 (3d Cir. 2009).............................................................................................12

Gallo v. Glen Cove City Sch. Dist.,
   2009 WL 1161818 (E.D.N.Y. Apr. 29, 2009) ..................................................................10

Genna v. SUNY Downstate Med. Ctr.,
   2008 WL 3334038 (E.D.N.Y. Aug. 10, 2008)...................................................................23

Guglietta v. Meredith Corp.,
   301 F. Supp. 2d 209 (D. Conn. 2004)..........................................................................15, 18

Hirsch v. Arthur Andersen & Co.,
   72 F.3d 1085 (2d Cir. 1995).............................................................................................19

Hunter v. Rowan Univ.,
   2007 WL 1038760 (D.N.J. Mar. 30, 2007).......................................................................22

Jones v. Dunkirk Radiator Corp.,
   21 F.3d 18 (2d Cir. 1994) ................................................................................................25

Joseph v. Northwood Group, LLC,
   2009 WL 2252336 (S.D.N.Y. July 23, 2009) ........................................................4, 15, 16

Kassner v. 2nd Ave. Delicatessen, Inc.,
   496 F.3d 229 (2d Cir. 2007).............................................................................................11

Lambert v. Genesee Hosp.,
   10 F.3d 46 (2d Cir. 1993) ................................................................................................11

Ledbetter v. Goodyear Tire & Rubber Co.,
   127 S. Ct. 2162 (2007).....................................................................................................10

Lewis v. N. Gen. Hosp.,
   502 F. Supp. 2d 390 (S.D.N.Y. 2007)..............................................................................24

Liburd v. Bronx Lebanon Hosp. Ctr.,
   2008 WL 3861352 (S.D.N.Y. Aug. 19, 2008).......................................................... *passim*

# TABLE OF AUTHORITIES

**Page(s)**

Luongo v. St. Paul Travelers,
  2009 WL 2432374 (S.D.N.Y. Aug. 7, 2009)...................................................................10

McWhite v. New York City Housing Auth.,
  2008 WL 1699446 (E.D.N.Y. Apr. 10, 2008) ..........................................................10, 11

Middleton v. Metropolitan College of New York,
  545 F. Supp. 2d 369 (S.D.N.Y. 2008)................................................................................24

Moultrie v. VIP Health Care Servs.,
  2009 WL 750219 (E.D.N.Y. Mar. 19, 2009).............................................................13, 23

Nat'l R.R. Passenger Corp. v. Morgan,
  536 U.S. 101 (2002)...........................................................................................................10

Nyeneime Ibok v. Sec. Indus. Automation Corp.,
  2009 WL 855926 (S.D.N.Y. Mar. 26, 2009) ....................................................................25

Patane v. Clark,
  508 F.3d 106 (2d Cir. 2007)..........................................................................13, 14, 17, 20

Perry v. State of New York Dep't of Labor,
  2009 WL 2575713 (S.D.N.Y. Aug. 20, 2009)......................................................... *passim*

Peterson v. Ins. Co. of North Am.,
  884 F. Supp. 107 (S.D.N.Y. 1995).....................................................................................13

Posner v. Sprint/United Mgmt. Co.,
  478 F. Supp. 2d 550 (S.D.N.Y. 2007)................................................................................20

Racker v. St. Bonaventure Univ.,
  2005 WL 1522797 (W.D.N.Y. Jun. 28, 2005)...................................................................25

Sealy v. Hertz Corp.,
  2009 WL 2591390 (S.D.N.Y. Aug. 21, 2009)...................................................................22

Slattery v. Swiss Reins. Am. Corp.,
  248 F.3d 87 (2d Cir. 2001)................................................................................................24

Spadola v. New York City Transit Auth.,
  242 F. Supp. 2d 284 (S.D.N.Y. 2003)...............................................................................24

Whyte v. Contemporary Guidance Servs., Inc.,
  2004 WL 1497560 (S.D.N.Y. July 2, 2004) .....................................................14, 16, 19, 22

## TABLE OF AUTHORITIES

**Page(s)**

Woodman v. WWOR-TV, Inc.,
 293 F. Supp. 2d 381 (S.D.N.Y. 2003)..............................................................13

**Statutes & Rules**

29 U.S.C. §§ 621 et seq.....................................................................................6

42 U.S.C. §§ 2000e et seq.........................................................................6, 12, 13

Administrative Code of the City of New York §§ 8-101 et seq. ........................6, 7, 8, 9

Fed. R. Civ. P. 8................................................................................................12

Fed. R. Civ. P. 12............................................................................................1, 3

Defendant Time Warner Inc. ("Time Warner" or the "Company") respectfully submits this memorandum of law in support of its motion to dismiss the amended complaint filed by Plaintiff Tamsin Wolf ("Wolf" or "Plaintiff") under Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Terminating an at-will female employee over the age of 40 is not a strict liability offense. A lawsuit cannot proceed based merely on the invocation of a terminated employee's age and gender in the context of an unremarkable workplace environment. The law required more even before Twombly and Iqbal—and undeniably requires more afterwards.

Tamsin Wolf's complaint is a patchwork story of an at-will employee who—over the period of her employment—did some fine work, did some poor work, was asked to improve, did not, and was terminated. Unsurprisingly, during the course of her employment, Wolf worked with other employees—some of whom were younger, some of whom may have been better. That is both natural and lawful. And unsurprisingly over time, changes in job responsibilities occurred—work shifted between and among employees. That is how businesses are routinely managed—and again, is certainly not unlawful. The law does not require that a workplace never change, or that managers may not manage, simply because to do so may result in decisions affecting or requiring the termination of a person who happens to fall into a protected class. The law does require that an employer proceed with age and gender-neutrality—and that is precisely how Time Warner conducted its business here.

Wolf's complaint must meet applicable pleading standards according to the requirements set forth in Twombly and Iqbal. On October 5, 2009, Wolf amended her complaint in an effort to meet those standards. While the amended complaint adds words, it does not add substance. Thus, the complaint fails to state a claim for several independent reasons.

<u>First</u>, the majority of Wolf's discrimination allegations continue to relate to events occurring years ago that are clearly time-barred and cannot support her federal claims.  (<u>See</u> Part I.)  <u>Second</u>, the allegations in the amended complaint still do not include *facts*—as opposed to *conclusions*—supporting a plausible inference that Time Warner took actions against her *because of* her age or sex-plus-age.  This is true whether the Court considers all the allegations in the amended complaint, or just those that are not time-barred.  (<u>See</u> Part II).  <u>Third</u>, the circumstances of Wolf's employment—she was hired at 51 and promoted at 52—and the inconsistencies between her allegations demonstrate the implausibility of her claims.  For example, Wolf suggests that she was instructed to transfer away the job responsibilities of an older male employee to encourage his retirement, but also argues that Time Warner considered older men—including that *specific* employee—to be "highly valued employees" who were "not subject[ed] to job diminution".  Similarly, Wolf claims that Time Warner did not "value" female employees who were over 40, while also complaining that Time Warner sought to cultivate the professional development of another female employee for up to *25 years* in the future at the company.  These and other inconsistencies belie the plausibility of her discrimination claims. (<u>See</u> Part II.)  Her New York City law-based claims fail for the same reasons.  (<u>See</u> Part IV.)

Wolf's allegation of retaliation also falls short.  (<u>See</u> Part III.)  The claim is based on a conclusory assertion that Wolf claimed discrimination prior to her termination.  The facts asserted do not link that complaint to her termination in a manner that could plausibly suggest retaliatory animus, do not suggest that Wolf reasonably believed in good faith that discrimination had occurred, and do not counter the "obvious alternative explanation" for her termination.  The law requires more.  (<u>See</u> Parts III-IV.)

As set forth below, the amended complaint should be dismissed in its entirety.

### STATEMENT OF FACTS[1]

**Hiring and Promotion of Wolf:**  In 2002, when she was 51 years old, Wolf commenced working as a benefits attorney in Time Warner's Corporate Legal Department. (Amended Complaint ("Am. Compl.") ¶¶ 10, 13-14.)  In 2003, when Wolf was 52 years old, she was promoted to Assistant General Counsel in the Legal Department.  (Id. ¶ 10, 22.)  Wolf also supervised two other attorneys:  Norma Mero, who was younger than 40, and Robert Ittner, who was approximately 70.  (Id. ¶ 47.)

**Supervision of Wolf:**  Wolf reported to several different supervisors during the course of her five-and-a-half year employment at Time Warner.  From 2002 to 2003, Wolf reported to Spencer Hays, Senior Vice President and Deputy General Counsel.  (Id. ¶¶ 13-14.) From 2003 to mid-2006, Wolf reported to Dennis Duffy.  (Id. ¶¶ 24, 46.)  Following Duffy's departure in August 2006, Wolf began reporting to Brenda Karickhoff ("Karickhoff"), the Deputy General Counsel of the Legal Department.  (Id. ¶ 46.)  On February 6, 2007, Kimmberly Bulkley ("Bulkley"), who was under the age of 40 and had the title of Senior Counsel of the Legal Department, became Wolf's direct supervisor.  (Id. ¶¶ 53-54.)  Karickhoff also continued to have supervisory authority over Wolf.  (See id. ¶¶ 60, 63-67.)  Wolf's complaint does *not* allege (because it cannot) that any of the supervisors she reported to during her employment other than Bulkley were younger than 40—including Karickhoff.

**Events Leading to Wolf's Termination:**  On February 14, 2007, Karickhoff provided Wolf with a performance review for 2006, during which Karickhoff had supervised Wolf for approximately five months.  (Id. ¶¶ 46, 63.)  Karickhoff gave Wolf an "Exceeds

---

[1] The facts alleged in the complaint are assumed to be true only for the purposes of this motion to dismiss.

Expectations" rating, but also identified a problematic characteristic of Wolf's performance: Wolf's tendency to be "distracted by what the client" (i.e., the individual at the company with whom Wolf was working on an issue) wanted, i.e., as opposed to what was in the best interests of the Company.  (See id. ¶¶ 63-66.)

On April 30, 2007, Wolf's supervisors met with her to raise additional issues, including problems relating to Wolf's supervision of Mero—such as mishandling her maternity leave and transition back to work—and some "communication deficiencies" that needed to be addressed.  (Id. ¶¶ 67, 70.)  Bulkley identified nine things that Wolf needed to do to improve. (Id. ¶ 70.)  Wolf's amended complaint does not allege that any reference was made at this meeting to Wolf's age or sex, or that Wolf raised any concerns regarding discrimination.  Wolf alleges only that, in the context of discussing Wolf's supervision of Mero, Karickhoff stated that the Legal Department needed to plan for the Department's needs and Mero's professional development "over the next ten, fifteen, twenty and twenty-five years".  (Id. ¶ 71.)

On May 4, 2007, Karickhoff and Bulkley sent Wolf a "Warning/Performance Improvement Plan" memo (the "Performance Memo"), which summarized the issues raised at the meeting with Wolf and in the 2006 performance review.  (Am. Compl. ¶ 77; Ex. A.[2])  These issues ranged from complaints that Wolf was seeking alternative employment while on the job and was involving her clients and colleagues in that process (causing clients to question her

---

[2] Wolf repeatedly references the Performance Memo in her complaint, and argues that it constituted "job diminution and unjustified discipline".  (Am. Compl. ¶¶ 77-82.)  "In assessing [a motion to dismiss], the Court . . .  may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing suit."  Joseph v. Northwood Group, LLC, 2009 WL 2252336, at *1, n.6 (S.D.N.Y. July 23, 2009) (internal quotes and cite omitted).  Wolf does not attach the Performance Memo to her amended complaint; it is therefore attached as Exhibit A to the Declaration of Katherine B. Forrest, submitted herewith.

commitment to complete their work) to mismanaging logistics of her direct-report's work schedule.  (See Ex. A.)  These incidents all stemmed from exhibiting "extremely poor judgment", failure to "follow direction" and failure to "communicate with managers and colleagues in a proactive, open and collegial manner", leading Wolf's supervisors to have "serious concerns about [Wolf's] performance as a manager and her suitability to continue in that role".  (Am. Compl. ¶¶ 77-78; Ex. A.)  The memo "reiterated":  "we want to see you succeed, and this warning/performance plan is intended to ensure that you understand the expectations of your position and what areas of your performance require improvement."  (Ex. A.)

To implement the Improvement Plan, Wolf was asked to provide a "daily log of her work to Bulkley", "'blind copy' Bulkley on all correspondence and communications", and have Bulkley review proposed assignments and administrative matters relating to Wolf's direct-reports (Mero and Ittner).  (See Am. Compl. ¶¶ 78-79, 81; Ex. A.)  The Improvement Plan expressed concern regarding, but did not revoke, Wolf's supervision over her direct-reports; and made no reference to Wolf's, or anyone's, age or sex.  (Ex. A.)

On June 1, 2007, Wolf sent a memorandum to Karickhoff and Bulkley that responded to and disputed the performance deficiencies they had raised.  (Am. Compl. ¶ 94.) Wolf's memo asserted, for the first time, that Wolf had been subjected to "unlawful discrimination" due to "diminution of her job responsibilities".  (Id. ¶ 95.)  Wolf had never before raised such a claim.  In response, Time Warner commissioned outside counsel to conduct an investigation, which included several interviews with Wolf.  (Id. ¶¶ 9-101.)  In mid-July 2007, the investigation concluded that there had been no discrimination against Wolf.  (Id. ¶ 102.)

By August of 2007, approximately 90 days had passed since Karickhoff and Bulkley placed Wolf on the Performance Improvement Plan.  (See id. ¶ 67.)  The Plan had stated

that failure to demonstrate improvement in the areas discussed could "lead to additional corrective action up to and including termination". (Ex. A.) Wolf's supervisors concluded that Wolf's performance issues had not improved, and indeed, that additional performance and communication issues had arisen. (See Am. Compl. ¶ 105.) On August 6, Karickhoff and Bulkley met with Wolf and advised her that her employment would be terminated. (Id. ¶¶ 103-04.) Wolf does not allege that the investigation, its findings, or her "discrimination" complaint were referenced in any way at this meeting.

**Procedural History:** On January 30, 2008, Wolf filed a complaint with the EEOC, and on May 8, 2009 the EEOC provided her with a right to sue letter. (Id. ¶ 8.) On July 23, 2009, Wolf commenced this lawsuit. Wolf claims entitlement to relief based on the discrimination and retaliation provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and New York City Human Rights Law (NYCHRL), Administrative Code of the City of New York §§ 8-101 et seq. (Id. ¶¶ 2-3.)

**Wolf's Allegations Concerning Harry Spencer:** Wolf alleges that, for a period of several years, she was subjected to age and sex-plus-age-based discrimination at Time Warner. Wolf traces the source of this purported discrimination to an isolated incident in July 2005, when Harry Spencer—an in-house client in the Global Benefits Group to whom she did not report—expressed "shock" upon learning that Wolf was 55 years old. (Id. ¶¶ 14, 18, 30-33, 41.) Wolf does not allege that Spencer expressed any derogatory sentiment based on her age—or that he made any statement at all relating to Wolf's sex. Nevertheless, Wolf argues that this revelation to Spencer was the transformative moment in her employment with Time Warner, leading to "diminished" job responsibilities with the Global Benefits group "after August 2005".

6

(Id. ¶¶ 33-41.)  Wolf alleges that she was asked to "sit in the back of the room" at a Benefits Council meeting on August 18, 2005, and that she was "excluded" from "negotiating substantive aspects of significant vendor agreements" after August 2005, from "working on a pension plan redesign project" in late 2006/early 2007, and from "working on an internal audit of Time Warner's 401(k) plan" in "Spring 2007".  (Id. ¶¶ 34, 37-38, 40.)  Wolf does not allege that any of those purported changes in responsibilities were connected with a demotion or reduction in pay, and does not assert that, over the allegedly two-plus years when those changes purportedly occurred, she ever claimed that they were motivated by her age or sex-plus-age—those claims were first made only after she received the Performance Memo.  (Id. ¶ 94.)

**Wolf's Allegations Concerning Karickhoff and Bulkley:**  Wolf alleges that the discrimination which purportedly began after Spencer learned her age in July 2005 continued in connection with her supervision by Karickhoff and Bulkley.  For example, Wolf vaguely alleges that Karickhoff "rejected and/or declined to entertain Ms. Wolf's requests for . . . advancement but also for more complex and rewarding assignments".  (Id. ¶ 52.)  Wolf does not allege facts describing her purported "requests for advancement" or describe incidents where she requested and was denied a promotion.  Wolf also asserts that after February 6, 2007, Bulkley directed Wolf "to review small-scale, routine contracts", employee claim analysis and "routine divisional inquiries".  (Id. ¶¶ 52, 58.)

In addition, Wolf claims that Karickhoff and Bulkley required her to "transfer" work and managerial responsibilities from herself to younger, female employees—specifically, to her direct-report (Mero), and her supervisor (Bulkley).  (Id. ¶¶ 59-62). With respect to Mero, Wolf alleges that she was instructed to "provide opportunities" for Mero's professional development and "transfer 'high visibility' responsibilities" to Mero.  (Id. ¶ 49, 60.)  Wolf asserts

no facts illuminating what the purported "high visibility" responsibilities were (or whether, consistent with Wolf's responsibility as a supervisor to facilitate a more junior attorney's development, they were simply assignments intended to familiarize clients with Mero by making her more "visible").  With respect to Bulkley, Wolf alleges that she was forced to "transfer projects and managerial responsibilities" when she was required to allow Bulkley to review Wolf's work product relating to assignments for Wolf's direct-reports, administrative matters, and a work log, and blind copy Bulkley on Wolf's correspondence.  (See ¶¶ 59-62, 79-81.) Again, Wolf does not allege that she was demoted or that her title was changed.

**Wolf's Allegations Concerning Robert Ittner:**  Wolf also asserts that Karickhoff instructed Wolf to "facilitate the 'transfer of knowledge'" from Robert Ittner, a male attorney who was approximately 70 years old who "possessed years of experience" and "knowledge of Time Warner's institutional history", to Mero, "a relative novice to employee benefits matters", "in anticipation of Ittner's retirement".  (Id. ¶¶ 47-48, 50.)  Wolf argues that Ittner "had not expressed any intention of retiring"—but never alleges that he did, in fact, retire. (Id. ¶ 51.)  Wolf does not assert that, in these purported interactions, Karickhoff expressed any discriminatory or derogatory views regarding Ittner (or Wolf) based on age or gender.  Wolf also asserts that older men in the Global Benefits group and the Legal Department, *including* Ittner, "were not subject to job diminution" and "were still highly valued employees".  (Id. ¶¶ 45, 92-93.)  Wolf argues that older men (and younger employees) also received "coaching" to address performance problems, while Wolf's requests were "ignored".  (Id. ¶¶ 112-13.)

**Wolf's Allegations Concerning Other Women Over 40:**  Wolf's amended complaint also adds two allegations relating to other women over 40.  The first is that women over 40 in "the Global Benefits group" purportedly "suffer[ed] job diminution because of sex-

plus-age". (Id. ¶¶ 42-43.) Wolf lists seven women who she claims, unlike "male employees over 40 in Global Benefits", were designated as "'non-strategic'", "denied opportunities for advancement," "had their job responsibilities substantially diminished, and/or were laid off, encouraged to resign or retire, or constructively discharged". (Id. ¶¶ 42-45.) Other than reciting these women's names, Wolf offers no facts supporting her conclusory allegation. (Id.) None of the women are alleged to have worked in the Legal Department or have reported to Karickhoff.

The second new allegation is that "women over 40 in the Legal Department" were treated as "'nonstrategic' and assigned to 'low value' work", while "older men" in the Legal Department, including her direct-report Robert Ittner, "were not subject to job diminution" and "were still highly valued employees". (Id. ¶¶ 83, 92-93.) Wolf references a woman over 40 named Susan Waxenberg who was supervised by Karickhoff for "several years prior and including 2006" and was subjected to "unsubstantiated criticism"; was not assigned to do "securities legal work" in favor of a "younger attorney" (the complaint does not allege that the "younger attorney" was under 40); and who ultimately left to "pursue other opportunities". (Id. ¶¶ 84-89.) Wolf does not describe any statements made about Waxenberg relating to her age.

## ARGUMENT

I.   THE MAJORITY OF WOLF'S FEDERAL DISCRIMINATION CLAIMS ARE TIME-BARRED

Wolf filed her EEOC charge on January 30, 2008. (Id. ¶ 8.) Consequently, all of her Title VII and ADEA claims premised on allegations occurring prior to April 5, 2007 are not actionable. "Claims based on conduct occurring more than 300 days before the filing of an EEOC Complaint are time-barred." Davison v. NYC Transit Auth., 2008 WL 3334078, at *1 (E.D.N.Y. Aug. 8, 2008). "[D]iscrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v.

Morgan, 536 U.S. 101, 113 (2002).  "Even when an employee alleges serial violations, i.e., a series of actionable wrongs, a timely EEOC charge must be filed with respect to each discrete alleged violation."[3]

The majority of the events forming the basis for Wolf's ADEA and Title VII discrimination claims purportedly took place in 2005, 2006 and prior to April 5, 2007, including Wolf's allegation about Spencer being surprised by her age.  (See Am. Compl. ¶¶ 29-67.) Spencer's comment, which allegedly occurred "on or about July 28, 2005" (id. ¶¶ 29-30), cannot constitute an unlawful employment act.  Bailey v. Synthes, 295 F. Supp. 2d 344, 353 (S.D.N.Y. 2003) (criticisms and comments "are discrete acts that cannot be lumped together to form a 'continuing violation'").  Moreover, "a continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act".  See Gallo v. Glen Cove City Sch. Dist., 2009 WL 1161818, at *6 (E.D.N.Y. Apr. 29, 2009).

Relatedly, Wolf's assertions that her "job responsibilities" were "diminished" based on a meeting on August 18, 2005 where she had to "sit in the back of the room"; the allegation that "[a]fter August 2005" she was "excluded from negotiating substantive aspects of significant vendor agreements"; and the claim that she was not asked to work on a pension plan redesign in "late 2006 or early 2007" are time-barred.  (Id. ¶¶ 33-34, 37-38, 40.)  "[A] completed act such as a discontinuance of a particular job assignment is not of a continuing nature",

_____

[3]  McWhite v. New York City Housing Auth., 2008 WL 1699446, at *6 (E.D.N.Y. Apr. 10, 2008) (internal quotes omitted) (citing Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2175 (2007) (superseded in part by statute on other grounds)); see Luongo v. St. Paul Travelers, 2009 WL 2432374 at *2 n.2 (S.D.N.Y. Aug. 7, 2009) ("[t]he newly enacted [Lilly Ledbetter Fair Pay Act] . . . supersedes Ledbetter only as it relates to the timeliness of discriminatory compensation claims").

Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 239 (2d Cir. 2007), and "reassignment" of "duties" is a discrete employment act.  See, e.g., McWhite, 2008 WL 1699446, at *6.

Wolf asserts that Karickhoff began supervising her in August 2006, and then told Wolf to "provide opportunities" for the "professional development" of Mero and to "transfer[] knowledge" from Ittner to Mero; the next date described in the chronological sequence of the "Factual Allegations" is February 6, 2007.  (Id. ¶ ¶¶ 46-53).  Similarly, Wolf's allegations about transferring "high visibility" work to Mero and "supervisory authority" to Bulkley (prior to receiving the Performance Memo) appear to have taken place before February 14, 2007 (id. ¶¶ 53-63); thus, these events are discrete acts occurring prior to April 5, 2007 and cannot support Wolf's Title VII or ADEA claims.  See McWhite, 2008 WL 1699446, at *6.

Finally, Wolf's conclusory allegations of a "pattern of hostility" towards older women at Time Warner are not actionable under Title VII or the ADEA.  The allegations relating to Waxenberg purportedly occurred in 2006 and "several years prior", and the purported discrimination towards certain women in the Benefits Group is not alleged to have occurred after April 5, 2007.  (Am. Compl. ¶¶ 35-46, 84.)  Moreover, none of these allegations describe a "specific policy or practice, such as discriminatory seniority lists or discriminatory employment tests" that would trigger the continuing violation exception.  See Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993) (internal cite omitted).

Thus, Wolf's only non-time-barred allegations under Title VII or the ADEA are: (i) that in 2007, Wolf reported to a supervisor who was younger than 40, leading to a "diminution" of responsibilities, which did not happen to older men; (ii) that Wolf's performance was criticized by her supervisors, who stated that the Legal Department needed to consider and plan for its and Mero's development "over the next ten, fifteen, twenty, and twenty-five years";

(iii) that after being placed on a performance improvement plan, Wolf had to apprise Bulkley of, and blind copy her on, work product and administrative matters; and (iv) that Wolf requested but did not receive "personal coaching to help remedy [Wolf's] alleged communication deficiencies" outlined by her supervisors, while "male attorneys over 40 and attorneys under 40 have been provided coaching".  (Id. ¶¶ 71, 77-80, 112-13.)  These allegations certainly do not support a plausible discrimination claim.  As set forth below, however, even if *all* allegations in the amended complaint are considered, they would not support a plausible discrimination claim.

II.     WOLF HAS NOT ALLEGED FACTS SUFFICIENT TO STATE A PLAUSIBLE
        ADEA OR TITLE VII DISCRIMINATION CLAIM.

        The Supreme Court's recent decisions in Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal have tightened the standard that a complaint must meet to satisfy Rule 8.[4] Now, to state actionable discrimination claims, Wolf's complaint must set forth "enough facts to state a claim to relief that is plausible on its face".  Twombly, 550 U.S. at 570.  Wolf's claims have facial plausibility only if they contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged".  Iqbal, 129 S. Ct. at 1949.  "[L]abels and conclusions" and "naked assertions" will not suffice to nudge Wolf's claims "across the line from conceivable to plausible".  Id. at 1949, 1950-51.  Consequently, if Wolf's complaint pleads facts that are "merely consistent with" Time Warner's liability, it "stops short of the line between possibility and plausibility of entitlement to relief".  Id. at 1949-50 (internal

---

        [4] See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (under Twombly and Iqbal, pleading standards have "shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss").

quotes and citation omitted).  The Court must "draw on its judicial experience and common sense" in conducting this analysis.  Iqbal, 129 S. Ct. at 1950.

When assessing Wolf's complaint in the context of this 12(b)(6) motion, Iqbal instructs that all pleadings that are "no more than conclusions" are "not entitled to an assumption of truth" and should be disregarded.  Id. at 1951.  Next, Iqbal requires that Wolf's factual allegations be considered to determine if they plausibly suggest an entitlement to relief.  Id.  This exercise must be applied in the context of the "elements [Wolf] must plead to state a claim" for substantive relief under the ADEA and Title VII.  See id. at 1947.

It is well settled that "[t]he same basic standards apply to both ADEA and Title VII claims".  Peterson v. Ins. Co. of North Am., 884 F. Supp. 107, 109 (S.D.N.Y. 1995).  Just as "mistreatment . . . is actionable under Title VII only when it occurs *because of* an employee's sex", liability under the ADEA depends on whether a defendant intentionally discriminated *because of* an employee's age.  Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); Woodman v. WWOR-TV, Inc., 293 F. Supp. 2d 381, 389 (S.D.N.Y. 2003).  Therefore, in order for Wolf to state a claim based on either the ADEA or Title VII, Wolf is "required to set forth factual circumstances from which discriminatory motivation" by Time Warner, tied directly to her sex and age, can plausibly be inferred.  Perry v. State of New York Dep't of Labor, 2009 WL 2575713, at  *2 (S.D.N.Y. Aug. 20, 2009) (citing Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007)).  In other words, Wolf's complaint must "demonstrate that the circumstances . . . give rise to or support an inference of discrimination or retaliation".[5]

---

[5] Moultrie v. VIP Health Care Servs., 2009 WL 750219, at *4 (E.D.N.Y. Mar. 19, 2009) (dismissing Title VII and ADEA claims); see also, e.g. Perry, 2009 WL 2575713, at *2 (dismissing Title VII and ADEA claims); Liburd v. Bronx Lebanon Hosp. Ctr., 2008 WL 3861352, at *6 (S.D.N.Y. Aug. 19, 2008) (dismissing ADEA and sex-based Title VII claims).

Factual allegations that could support an inference of age or sex-plus-age discrimination include remarks that convey discriminatory animus regarding her age or sex-plus-age or "preferential treatment" given to similarly situated individuals because of their (versus her) age or sex-plus-age. Perry, 2009 WL 2575713, at *2; Liburd, 2008 WL 3861352, at *6 (claim that plaintiff was replaced by a younger employee, without more, is "not enough to survive a motion to dismiss"). Critically, allegations that are merely "consistent with" Time Warner taking action "because of" protected status are insufficient to establish a plausible discriminatory purpose—particularly where an "obvious alternative explanation" exists.[6]

A.   Wolf's Discrimination Claims Are Belied By the Circumstances of Her Employment.

The fact that Wolf was 51 years old and already well within the protected age class at the time that Time Warner offered her employment belies her claim of age and sex-plus-age-based discrimination.[7] Further undermining her claims is the fact that Wolf was *promoted* a year later, at the age of 52.[8] (Am. Compl. ¶ 22.) Moreover, the supervisor who terminated her

---

[6] See Iqbal, 129 S. Ct. at 1951-52; Adams v. Lafayette College, 2009 WL 2777312, at *3 (E.D. Pa. Aug. 31, 2009) ("As Iqbal and Twombly teach, it is not enough merely to . . . suggest implausible inferences from factual allegations."). Moreover, "to be actionable", discriminatory acts "must rise to the level of an 'adverse employment action'", causing a "materially adverse change in the terms and conditions of employment" and not "mere[ly] an inconvenience". Patane, 508 F.3d at 112-13; Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005).

[7] Liburd, 2008 WL 3861352, at *6 ("[plaintiff's] conclusory allegation that [defendant] discriminated against her on account of her age is belied by her having been hired when she was forty-seven years old"); Whyte v. Contemporary Guidance Servs., Inc., 2004 WL 1497560, at *3 (S.D.N.Y. July 2, 2004) ("plaintiff's conclusory allegation that [defendant] discriminates against older employees in an effort to force them to resign is belied by plaintiff's allegation that he was hired when he was forty-three years old").

[8] Cf. Cooperman v. Solil Mgmt., Inc., 2000 WL 16929, at *6 (S.D.N.Y. Jan 11, 2000) (finding that, where plaintiff was in protected group when hired, and then given increased responsibilities and a raise, facts were inconsistent with age-based discrimination).

employment was a woman in the same sex-plus-age class as Wolf (Karickhoff).[9]  Not only is it implausible that a similarly situated supervisor would discriminate against Wolf based on protected characteristics that they share,[10] but the fact that a woman in the protected age class was holding a senior executive and managerial position in the first place belies Wolf's claims that "older women" were not "valued" or "given opportunities for advancement" at Time Warner.[11]  These circumstances render it implausible that Wolf's claims "raise a right to relief above the speculative level".  Iqbal, 129 S. Ct. at 1951 (quoting Twombly, 550 U.S. at 555).

        B.      Wolf's Conclusory Allegations Cannot Support Her Claims.

Iqbal requires that the court "identify[] conclusory allegations and proceed[] to disregard them, for they are not entitled to the presumption of truth".  Northwood Group, 2009 WL 2252336, at *2 (internal quotes omitted).  A number of Wolf's assertions are mere "conclusory allegations or legal conclusions masquerading as factual conclusions".  Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (internal quotes and cite omitted).  Once the conclusions are disregarded, it is apparent that the facts to which they relate, standing alone, could not plausibly support a claim to relief.

First, Wolf argues that the performance problems brought to her attention by Karickhoff and Bulkley "were a pretext for age and sex-plus-age discrimination".  (Am. Compl.

---

[9] As noted in the Statement of Facts, supra, Wolf does not allege, because she cannot, that Karickhoff (or any supervisor other than Bulkley) was under the age of 40.

[10] See Guglietta v. Meredith Corp., 301 F. Supp. 2d 209, 216 (D. Conn. 2004) (finding that where "both the decision-maker and employee chosen over Plaintiff" were female, the circumstances were "inapposite to a viable claim of gender discrimination").

[11] Cf. e.g., Baptiste v. New York City Transit Auth., 2004 WL 626198, at *5 (S.D.N.Y. Mar. 29, 2004) ("lack of discrimination against other similarly situated employees is further evidence that prevents the creation of an inference of discrimination"); Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 524 (3d Cir. 2003).

¶ 118.)  That "bare assertion" is of a conclusory nature, "amount[ing] to nothing more than a

formulaic recitation of the elements" of Wolf's claims.  See Iqbal, 129 S. Ct. at 1951 (internal

quotes and cite omitted); Northwood Group, 2009 WL 2252336, at *2.  After this assertion is

disregarded, Wolf asserts no facts that could plausibly support the notion that the performance

problems were raised with a discriminatory motive (as opposed to her supervisors' clearly stated

efforts to attempt to garner improvement on those issues and to "see [Wolf] succeed" in her

position (see Ex. A)).[12]

       Second, Wolf claims that she "observed a pattern of mistreatment and diminution

in job responsibility toward older women", and that women over 40 in Global Benefits and the

Legal Department experienced "adverse actions" such as being "denied opportunities for

advancement, ha[ving] their job responsibilities substantially diminished" or "constructively

discharged".  (Am. Compl. ¶¶ 42-44, 100.)  Even if these allegations were not time-barred, Wolf

offers no facts to support them.  See Perry, 2009 WL 2575713, at *3 (conclusory statements and

statistics concerning minority composition of defendant's workforce insufficient to state a

claim); Whyte, 2004 WL 1497560, at *3 (allegations about "policy of discrimination" must be

supported by allegations showing "in what manner that policy manifested itself").

       Third, Wolf makes a number of general allegations that the purported job

diminution and discrimination she and other older women allegedly suffered did not happen to

older men.  These conclusory allegations are contradicted by other allegations (i.e., her

insinuation that Karickhoff tried to push out a 70-year old male by transferring his

---

[12] Of course, the mere receipt of a negative review, without more, cannot constitute an
adverse employment action.  Diaz v. Weill Medical Ctr. of Cornell Univ., 2004 WL 285947, at
*21 n.30 (S.D.N.Y. Feb. 13, 2004).

responsibilities away to a younger woman) and are unsupported by the assertion of any *facts*; they are therefore not entitled to a presumption of truth. Iqbal, 129 S. Ct. at 1949, 1951.[13]

C.   Wolf's Discrimination Claims Should Be Dismissed Because Her Remaining
      Factual Allegations Do Not Plausibly Support an Entitlement to Relief.

Wolf's remaining factual allegations do not support her ADEA or Title VII claims.  The core of these allegations is that, after a change in the Legal Department's reporting structure, she reported to a woman who was younger than 40 (Bulkley) from February to August of 2007, which led to "diminished responsibilities" and the "transfer of responsibilities" to younger, female employees:  Bulkley and Mero.  (Am. Compl. ¶¶ 53, 57-58, 67-81.)

Wolf's allegations relating to Bulkley fall short of Iqbal's standard—they cannot support an inference that any actions with respect to Wolf's reporting assignments or responsibilities happened *because of* Wolf's age or sex-plus-age.  Wolf's allegations describe no remarks that "convey discriminatory animus" in relation to her supervision by Bulkley, Perry, 2009 WL 2575713, at *2, and Wolf alleges no facts supporting a plausible inference that Bulkley was selected for her managerial position based on her younger age rather than her job performance.  Under Iqbal, this is not an allegation that non-class members were "given preferential treatment when compared to [p]laintiff" that could plausibly support an inference of "discriminatory animus".  See Patane, 508 F.3d at 112; Liburd, 2008 WL 3861352, at *6.

---

[13] Similarly, Wolf alleges that after her conversation with Spencer, Wolf's work in the Global Benefits group was "increasingly limited" and was "reassigned to younger employees, older male employees, and/or outside contractors", but fails to provide any facts supporting this conclusory assertion.  (Am. Compl. ¶ 33, 35-41.)  While Wolf describes some tasks purportedly not given to her, they are not alleged to have been assigned to younger or older male employees instead.  (Id. ¶¶ 36-40.)  Only one task—a "vendor agreement negotiation"—is stated as having been assigned to "outside consultants".  (Id. ¶ 40.)  Wolf asserts no facts supporting an inference that outsourcing a task to a third party consultant was due to invidious discrimination against Wolf.  And in any event, these claims are red herrings:  Wolf acknowledges that she worked in the Legal Department—*not* Global Benefits—and that she did *not* report to Spencer.  (See n.16.)

Wolf also fails to assert facts suggesting that any purported "diminution" or "transfer" in her authority to Bulkley, including the Improvement Plan's instruction that she blind copy Bulkley on her managerial work and other work communications, was due to discrimination.  Instead Wolf relies on a theory akin to strict liability:  if responsibilities go to someone younger, it must be assumed that the motivation is age-based.  The law however, recognizes that this is inconsistent with workplace realties; thus, the mere fact that a plaintiff's responsibilities are assumed by a younger employee does not, standing alone, defeat a motion to dismiss.  Liburd, 2008 WL 3861352, at *6; cf. Guglietta, 301 F. Supp. 2d at 213 ("[a]s the Second Circuit has pointed out, any time one candidate is chosen over another there are going to be differences between the candidates").  Moreover, Wolf does not argue that she was demoted or received a reduction in title and therefore describes no adverse employment action.[14]  Most importantly, Wolf does not assert facts suggesting why, given that Wolf's supervisors had concerns about Wolf's managerial skills and had received complaints about Wolf's communication style, it was invidiously motivated for her supervisor to have exerted additional supervision over Wolf's managerial work and requested to be blind copied on Wolf's communications.  See Iqbal, 129 S. Ct. at 1951 (allegations merely "consistent with" a defendant taking action because of protected status are insufficient to "plausibly establish" a discriminatory "purpose", particularly where an "obvious alternative explanation" exists).

Wolf's allegations about transferring responsibilities to Mero fail for the same reason.  Wolf claims that she was required to provide for the professional development of Mero over the next ten to twenty-five years.  Those facts are equally or more consistent with lawful

---

[14] Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) (decrease in work-load without any formal demotion or reduction in pay is not an actionable adverse employment action).

and ordinary workplace events:  as a matter of common sense, the fact that Karickhoff instructed

Wolf to develop the skill-set of a more junior female attorney, who Wolf was responsible for

supervising, does not suggest age or sex-plus-age discrimination.  Moreover, the notion that

Time Warner was providing for Mero's professional development for *twenty-five years* in the

future suggests anything *but* age discrimination.[15]

> D.   Even If All Factual Allegations In the Amended Complaint Are Considered, They
>      Do Not Support A Plausible Claim for Relief.

Moreover, even if *all* of Wolf's *time-barred* and non-conclusory factual

allegations are considered, the amended complaint would be insufficient to support a plausible

claim of discrimination based on age or sex-plus-age.  None of the allegations plausibly support

an inference that her age was a factor in any employment actions—particularly when compared

to the "obvious alternative explanation[s]" for the events identified.  Iqbal, 129 S. Ct. at 1951-52.

Wolf's complaint *still* would allege no remarks that "convey discriminatory animus" or "factual

circumstances from which discriminatory motivation can be inferred".  Perry, 2009 WL

2575713, at  *2.  There are *no* allegations that any statements were ever made by anyone at Time

Warner relating to *sex*-plus-age.  And the purportedly age-related statements Wolf describes

simply do not suggest discrimination.  The first allegation is that Spencer expressed surprise at

Wolf's age.  Expressing surprise at a woman's age is a facially neutral statement, and is far from

---

[15] Wolf also concludes that by saying the Legal Department needed to plan for its needs for the next ten to twenty-five years, Karickhoff "intended to exclude Ms. Wolf, who was 55 at the time, approximately ten years away from age 65, the normal retirement age at Time Warner". (Am. Compl. ¶ 72.)  That assertion is inconsistent with Wolf's factual assertion that another attorney in the Legal Department, whom she herself supervised, was approximately 70 years old in 2006.  (See id. ¶ 47.)  This recognition that employees can, and do, continue to work in the Legal Department well past the age of 65 belies Wolf's conclusory statement to the contrary.  Cf. Whyte, 2004 WL 1497560, at *3 (citing Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995) ("[C]onclusory allegations need not be credited . . . when they are belied by more specific allegations in the complaint.").

the type of "remark[] that could be viewed as reflecting discriminatory *animus*" that supports a discrimination claim.  See Patane, 508 F.3d at 112 (emphasis added); compare Liburd, 2008 WL 3861352, at *5 (complaint alleging that supervisor stated "I have a problem with black people" and called plaintiff a "black ass" sufficient to survive motion to dismiss race-based discrimimation claims, although even those claims "barely ma[de] the cut").  And even if the statement did indicate age-based animus (which it does not), Wolf admits that Spencer was *not* her supervisor.  See Posner v. Sprint/United Mgmt. Co., 478 F. Supp. 2d 550, 559 (S.D.N.Y. 2007) (stray remark of non-supervisor does not evince age discrimination).[16]

The other statements that Wolf has posited as relating to age are Karickhoff's purported instruction to "transfer knowledge" from Ittner, who was approximately 70 years old, to Norma Mero, who was a woman under 40 years old, and to "provide opportunities for Mero's professional development" and the needs of the Legal Department over the "next ten, fifteen, twenty, twenty-five years".  (Am. Compl. ¶¶ 49-50, 71.)  As discussed above, those facts are equally or more consistent with lawful and ordinary workplace behavior.  Wolf offers only speculation and carefully placed quotation marks to suggest that Ittner's retirement was a topic of concern or the motivation for her instructions to teach skills to Mero:  the words "'transfer of knowledge'" are in quotes in Wolf's complaint, but the words "in anticipation of Ittner's retirement" are not.  (Id. ¶ 50.)  No allegations of comments or attitude regarding the prospect of

---

[16] While Wolf alleges that after the comment in 2005, Spencer became "increasingly inaccessible" and her work in the Global Benefits Group became "increasingly limited", she simultaneously acknowledges that she never held a job in the Global Benefits Group—she was always part of Time Warner's Corporate Legal Department.  (Id. ¶¶ 14, 35, 46, 53.)  And while Wolf alleges that she "worked closely" with Spencer and that she was viewed as his "'right-hand' person", she also acknowledges that, as Assistant General Counsel, she reported to Dennis Duffy, then to Karickhoff, the Deputy General Counsel, both in the *Legal Department*; and then to Bulkley, also in the *Legal Department*, and acknowledges that changes in the reporting structure within the Legal Department occurred over the years.  (Id. ¶¶ 14, 18, 20, 24, 46, 53.)

Ittner's retirement are alleged.  It is common sense that facilitating knowledge-sharing between several attorneys in a small group would assist in creating more balanced work-loads between the attorneys and would ensure consistent delivery of legal services to clients while, for example, one attorney may be on vacation.  And given the fact that Ittner "possessed years of experience in the Legal Department and knowledge of Time Warner's institutional history", it makes perfect sense that Karickhoff would have seen a benefit in trying to educate and share that knowledge with other colleagues in the group.  (Id. ¶ 48, 50.)  Similarly, the request that Wolf give Mero "high visibility" assignments is entirely consistent with Wolf's role as supervisor—i.e., the need to help Mero gain familiarity with clients served by the benefits attorneys in the Legal Department, who, as Wolf acknowledges, Mero could be working with for many years to come—and is not plausibly consistent with discriminatory intent.

Moreover, even if Wolf's allegations that her job responsibilities "diminished" after July of 2005 were not time-barred, Wolf asserts no demotion, reduction in title, or material change in the terms of her employment, but simply points to several projects that occurred over the years on which she claims she should have worked, and the request that she perform "routine" legal work  (Am. Compl. ¶¶ 33, 36-40, 58).  The latter requirement was undeniably part of her job as a benefits attorney; and it is common sense to expect that, over the course of one's employment, one's responsibilities will shift with the needs of one's employer.  Even if it were true that Wolf's responsibilities changed somewhat over time from what Wolf thought they were supposed to be, that also would not constitute an actionable adverse employment action.[17] And requiring Wolf to show Bulkley, her own supervisor, a "proposal related to Mero's

---

[17] Bennett, 136 F. Supp. 2d at 248 (decrease in work-load without any formal demotion or reduction in pay is not actionable adverse employment action).

maternity leave", hardly constituted a "transfer [of] supervisory authority", as Wolf conclusorily alleges.  (Am. Compl. ¶¶ 59, 61.)

Wolf's claim that Karickhoff rejected or "declined to entertain" Wolf's "requests for professional opportunities" is also unsupported by facts indicating discriminatory animus, as opposed to business decisions about Wolf's professional capabilities made by a supervisor.  (Id. ¶¶ 52-53.)  In other words, Wolf once again offers nothing to suggest that Karickhoff's actions were motivated by her age or sex-plus-age.[18]  To the extent that Wolf attempts to insinuate a discriminatory "failure to promote" claim by these allegations, that effort clearly fails.[19]

Wolf's allegations about Waxenberg also fail to support any inference of discrimination.  No comments made to or about Waxenberg suggesting discrimination are alleged; putting the conclusory assertions aside, it is unremarkable that another employee managed by Karickhoff (in the same sex-plus-age class) did not assume "right-hand responsibility" for securities work and then left to pursue other opportunities.  (Id. ¶¶ 84-89.)

---

[18] To try to make up for this deficiency, Wolf asserts that she received positive reviews and praise between 2002 to 2006—but this is plainly insufficient to create an inference of discrimination by Karickhoff.  (Am. Compl. ¶¶ 21, 27, 64-65.)  Common sense tells us that it is not unusual for an employee's performance reviews to change over time, particularly where an employee begins reporting to different supervisors and as the employer accumulates knowledge about an employee's capabilities, limitations and faults.  At any rate, the existence of prior, non-negative reviews do not provide Wolf with support for a plausible inference of discriminatory animus.  Hunter v. Rowan Univ., 2007 WL 1038760, at *11 (D.N.J. Mar. 30, 2007) (while plaintiff "presented evidence of some positive evaluations", that was insufficient to infer discrimination).

[19] Whyte, 2004 WL 1497560, at *4; see also Sealy v. Hertz Corp., 2009 WL 2591390, at *6 (S.D.N.Y. Aug. 21, 2009) ("If a plaintiff fails to demonstrate that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion, the failure to promote claim will be dismissed.").

At base, *all* of Wolf's allegations of discrimination are entirely consistent with actions taken for benign and lawful reasons as opposed to being taken "because of" Wolf's age or sex.  As such, "discrimination is not a plausible conclusion".  Iqbal, 129 S. Ct. at 1952.

III.    PLAINTIFF HAS NOT ASSERTED FACTS SUFFICIENT TO STATE A PLAUSIBLE RETALIATION CLAIM

To state a retaliation claim, Wolf's complaint must "demonstrate that 'the circumstances . . . give rise to or support an inference of . . . retaliation".  Moultrie, 2009 WL 750219, at *4 (internal quotes and cite omitted).  Wolf's amended complaint does not assert facts suggesting a retaliatory motive for her termination.  Genna v. SUNY Downstate Med. Ctr., 2008 WL 3334038, at *3-4 (E.D.N.Y. Aug. 10, 2008).  For example, Wolf does not allege that in response to her complaint of discrimination she was rebuked by anyone at Time Warner.  Indeed, she acknowledges that Time Warner's only response was to immediately commission an investigation led by outside counsel to evaluate her complaints.  (Am. Compl. ¶ 97.)

While Wolf does not allege that any reference was made to her June 1 memo when she was terminated, she acknowledges *multiple* communications occurring on the day of, and leading up to, her termination relating to the "Performance Improvement Plan" on which she had been placed, her failure to improve since receiving it, and additional performance and communications deficiencies that had developed since then.  (Id. ¶¶ 77-81, 105.)  Wolf's conclusory allegations that she complied with the performance plan and never violated any Time Warner policies—asserted for the first time in her amended complaint—are irrelevant to the termination of an at-will employee, do not create an inference of retaliatory animus, and do not counter the "obvious alternative explanation" that her employer remained dissatisfied with her performance, as is repeatedly referenced throughout her complaint.  See Genna, 2008 WL 3334038, at *3-4; Iqbal, 129 S. Ct. at 1951-52.

Moreover, temporal proximity, standing alone, does not support Wolf's retaliation claim, because although Wolf alleges that she was terminated several weeks after the internal investigation concluded, she also acknowledges that, *many months* prior to this event and to her first allegation of discrimination, her supervisors had expressed dissatisfaction with her performance, placed her on an improvement plan, and warned that "additional corrective action", including "termination", was a possibility.  (See Am. Compl. ¶¶ 65, 67, 73, 77-78; Ex. A.)[20]

In addition, in order for Wolf to have engaged in "protected activity", Wolf must have had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law".[21]  The timing of Wolf's discrimination complaints—one month after her supervisors raised concerns about her performance—makes it unlikely her complaints were offered in good faith and more likely that they arose in response to performance-based criticism.[22]  Moreover, the reasonableness of her belief that discrimination occurred is belied by the fact that Time Warner commissioned outside counsel to conduct an extensive internal investigation of her allegations and this investigation concluded that discrimination did not

---

[20] "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."  Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) (gradual diminishment of job responsibilities due to dissatisfaction with performance prior to protected activity and termination prevent inference of retaliation); see also Lewis v. N. Gen. Hosp., 502 F. Supp. 2d 390, 406-07 (S.D.N.Y. 2007) (same).

[21] Spadola v. New York City Transit Auth., 242 F. Supp. 2d 284, 291 (S.D.N.Y. 2003) (belief must be "objectively reasonable, in the sense that the asserted opposition must be grounded on sufficient evidence that the employee was the subject of discrimination and harassment at the time the protest to the offending conduct is registered.").

[22] Cf. Middleton v. Metropolitan College of New York, 545 F. Supp. 2d 369, 374 (S.D.N.Y. 2008) ("[b]ecause of the timing of [the]complaint, [among other factors], the Court is not persuaded that at the time the incident occurred [plaintiff] reasonably believed she had been a victim of sexual harassment, but rather, that she viewed the sexual harassment allegation as a means of avoiding disciplinary action for her own misconduct").

occur.[23]  (Am. Compl. ¶¶ 97-102.)  Without a plausible suggestion of a good faith, reasonable

belief of discrimination, the retaliation claim fails.[24]  Wolf's decision to claim discrimination did

not insulate her from legitimate decisions by Time Warner to terminate her for lawful reasons.[25]

## IV.   PLAINTIFF'S NEW YORK CITY-BASED DISCRIMINATION CLAIMS SHOULD BE DISMISSED

An independent analysis of Wolf's discrimination and retaliation claims under the

NYCHRL compels the same result because *none* of the factual allegations in Wolf's amended

complaint support a plausible claim that any actions occurred "because of" her age or sex-plus-

age, or that she was "treated less well than other employees due to unlawful discrimination".  Cf.

Nyeneime Ibok v. Sec. Indus. Automation Corp., 2009 WL 855926, at *7 (S.D.N.Y. Mar. 26,

2009); Cretella v. Liriano, 633 F. Supp. 2d 54, 70, 76 (S.D.N.Y. 2009).

## CONCLUSION

For the foregoing reasons, Plaintiff's amended complaint fails to state a claim

against Defendant.  Because Plaintiff has already taken the opportunity to amend her complaint

once, further amendment would be futile.  The amended complaint should be dismissed with

prejudice.

---

[23] The plausibility of Wolf's discrimination claim is also undermined by the results of the investigation.  (Am. Compl. ¶¶ 97-102.)

[24] Cf., e.g., Racker v. St. Bonaventure Univ., 2005 WL 1522797, at *5-6 (W.D.N.Y. Jun. 28, 2005) (recommending dismissal where "complaint contains no allegations of fact which would form the basis for a good faith, reasonable belief that defendant violated Title VII"); see also Barcher v. New York Univ. School of Law, 993 F. Supp. 177, 185 (S.D.N.Y. 1998) ("no reasonable person . . . could have had a reasonable belief that she had a valid Title VII claim").

[25] See Jones v. Dunkirk Radiator Corp., 21 F.3d 18, 21 (2d Cir. 1994) ("[A]n employer has a nearly unfettered right to discharge an employee."); see Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) (fact that employer "proceed[ed] along lines previously contemplated", even after Title VII suit was filed, was not evidence of causality for retaliation claim).

November 6, 2009

CRAVATH, SWAINE & MOORE LLP,

by
_____/s/ Katherine B. Forrest_____
Katherine Forrest
A member of the Firm

Attorneys for Defendant
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000