UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————

No. 09 Civ. 6549 (RJS)

———————————

TAMSIN WOLF,

Plaintiff,

VERSUS

TIME WARNER, INC.,

Defendant.

———————————

MEMORANDUM AND ORDER
September 17, 2012

———————————

RICHARD J. SULLIVAN, District Judge:

Plaintiff Tamsin Wolf brings this action against her former employer, Time Warner, Inc., alleging that Defendant discriminated against her on the basis of her age and gender and retaliated against her for complaining about this discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-109, *et seq.* (the "NYCHRL"). Before the Court is Defendant's motion for summary judgment and Plaintiff's partial motion for summary judgment on Defendant's eighth affirmative defense, both made pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, Defendant's motion is granted in its entirety, and Plaintiff's motion is denied.

I. BACKGROUND

A. Facts[1]

Plaintiff began working at Time Warner as a Senior Counsel benefits attorney in the Legal Department in January 2002, when she was 51 years-old. (Def. 56.1 Stmt., Doc. No. 51 ("Def. 56.1"), ¶ 1.) Plaintiff's letter of employment stated that "[her] employment is at will" and "the Company retains the right to terminate [her] employment at any time and for any

---

[1] The following facts are taken from the pleadings, the parties' Local Civil Rule 56.1 Statements, the affidavits submitted in connection with the instant motions, and the exhibits attached thereto. The facts are undisputed unless otherwise noted. Where one party's 56.1 Statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact.

reason." (*Id.* ¶ 2; Decl. of Lillian S. Grossbard, dated Oct. 7, 2011, Doc. No. 52 ("Grossbard Decl."), Ex. JX 1 at 2.)[2] Plaintiff worked as an attorney at Time Warner until her termination on August 6, 2007. (Grossbard Decl., Ex. DX 10 at 13.)

1. Plaintiff's Work with Harry Spencer

When Plaintiff started at Time Warner, she was supervised in the Legal Department by Spencer Hays ("Hays"), Senior Vice President and Deputy General Counsel. Although Hays testified that Plaintiff "worked to a significant degree independently from [him]," he rated her work highly in performance reviews. (*Id.* Exs. DX 7 at 17:16-24; JX 2 at 1-6.) Nevertheless, while Plaintiff was supervised by Hays, she primarily worked for the Global Benefits Department within Time Warner, which was headed by Harry Spencer, a non-lawyer Vice President of the company. (*Id.* Exs. DX 1 at 85:12-13, 99:15-22; DX 4 at 32:24-33-33:25.) Spencer was not Plaintiff's boss, but the two worked closely together, with Spencer frequently assigning projects directly to Plaintiff. (*Id.* Exs. DX 1 at 110:16-19, 110:24-111:1, 116:21-24; DX 4 at 58:10-11; Aff. of Herbert Eisenberg, dated Nov. 8, 2011, Doc. No. 65 ("Eisenberg Aff."), Ex. PX 3 at 31:19-25.) Spencer also provided feedback to Hays in connection with Plaintiff's performance evaluations. (Grossbard Decl., Exs. DX 1 at 225:13-20; DX 4 at 40:21-41:8.) Spencer and Plaintiff enjoyed a particularly close relationship throughout Plaintiff's tenure at Time Warner, although at times Spencer had complaints about Plaintiff's behavior and interpersonal skills. (*See id.* Exs. DX 4 at 122:8-123:16, 125:12-18, 179:9-180:20; DX 9 at 1-10; DX 16 at 8, 10.)

On February 4, 2003, when Plaintiff was 52 years-old, she was promoted to Assistant General Counsel in the Legal Department. (*Id.* Ex. DX 15 at 1-2, 5.) As part of that promotion, Plaintiff began supervising Norma Mero ("Mero"), a 35-year-old woman, and Robert Ittner ("Ittner"), a 64-year-old man. (*Id.* Exs. DX 1 at 92:4-20; DX 3 at 24:9-20.) At that time, Plaintiff reported directly to Dennis Duffy ("Duffy"), Vice President of the Employment Group in the Legal Department. (*Id.* Ex. DX 1 at 90:21-25.)

At some point in 2004 or 2005, the Global Benefits Department was reorganized, and Spencer, as head of the department, gained responsibility for the Human Resources Operation Group. (Eisenberg Aff., Ex. PX 3 at 6; Grossbard Decl., Ex. DX 4 at 44:14-18.) As part of that reorganization, Spencer hired Dawn Werle as Senior Director of Qualified Plans in May 2005. (Grossbard Decl., Exs. DX 1 at 517:5-8; DX 4 at 45:13-18.) Before Werle was hired, Plaintiff assisted Spencer in negotiating benefits contracts with outside vendors; however, that responsibility was transferred to Werle once she joined the company. (*Id.* Exs. DX 4 at 141:4-13, 149:2-5, 184:22-185:9; DX 17 at 5.) After Werle was hired, Plaintiff no longer worked "on all aspects of significant vendor contracts including pricing, scope of services, performance guarantees, performance standards and performance penalties . . . [;] no longer gave presentations to the Benefits Council[;] . . . [and] was excluded from the internal audit process." (Eisenberg Aff., Ex. PX 2 at 514-15.) Instead, Plaintiff spent most of her time focusing solely on legal work, or in her words, "drafting contracts and . . . arguing

---

[2] Exhibits identified as DX are exhibits submitted by Defendant alone; PX refers to exhibits submitted by Plaintiff alone. Those identified as JX are exhibits submitted jointly by Plaintiff and Defendant.

2

indemnifications and legalese." (Grossbard Decl., Ex. DX 17 at 5.)

Although Plaintiff denies that she had a strained relationship with Werle, the record indicates that Plaintiff bristled at the redistribution of responsibilities and that Spencer had to intervene at times to manage the relationship between Plaintiff and Werle. (*Id.* Exs. DX 14 at 7-8; DX 17 at 5.) Despite this tension, and Plaintiff's evident dissatisfaction with the change in the scope of her duties, Plaintiff and Spencer maintained a close relationship. Spencer continued to seek Plaintiff's legal advice and provided positive feedback to Plaintiff's supervisors in the Legal Department. (*Id.* Exs. DX 14 at 5-6; DX 20 at 2-3, 7-9, 11-13, 17.) Additionally, while many of Plaintiff's previous responsibilities shifted to Werle, Plaintiff and her direct reports, Mero and Ittner, continued to handle the legal work within the Global Benefits Department. (*Id.* Ex. DX 1 at 521:25-523:5.)

In July 2005, Spencer reviewed employee data for Time Warner's corporate employees for the purpose of succession planning. (*Id.* Ex. DX 4 at 48:4-49:11.) On July 28, 2005, Spencer asked Plaintiff at a Benefits Council meeting whether she was in fact 55 years-old, noting that she looked much younger. (*Id.* Ex. DX 1 at 361:3-17.) When Plaintiff confirmed her age, Spencer "expressed amazement and shock." (*Id.* Ex. DX 1 at 361:17.)

2. Plaintiff's Supervision by Brenda Karickhoff and Kimmberly Bulkley

In July 2006, Duffy left Time Warner, and Brenda Karickhoff began supervising Plaintiff and Kimmberly Bulkley, who was at that time Senior Counsel in the Employment Group. (*Id.* Exs. DX 3 at 13:23-14:10, 23:18-20; JX 8 at 3.) Before leaving, Duffy provided Karickhoff with a written assessment of Plaintiff, stating that "[a]lthough very client-focused, [Plaintiff] is not very team-focused." (*Id.* Ex. DX 21.) Duffy observed that she "ha[d] done relatively little in developing her two direct reports – Bob Ittner and Norma Mero – to assume responsibilities commensurate with their Senior Counsel titles." (*Id.*) He also noted that he found "[Plaintiff's] judgment" to be "questionable," "to say the least," and that she reacted poorly "to supervision of any significant kind." (*Id.*)[3]

In February 2007, Karickhoff promoted Bulkley, who was then 37 years-old, to lead the Labor/Employment & Benefits Group within the Legal Department. (*Id.* Exs. DX 2 at 127:5-128:12, 137:10-24, 140:21-25; DX 3 at 24:2-6.) At that time, Karickhoff informed Plaintiff that she would be reporting to Bulkley. (*Id.* Ex. DX 1 at 536:23-537:6.) Although Plaintiff retained her title, salary, and supervisory authority over Ittner and Mero, Plaintiff immediately told other employees that she had been "demoted." (*Id.* Ex. JX 8 at 13.) Soon thereafter, Karickhoff and Bulkley began to receive comments from colleagues about Plaintiff's negative attitude, inappropriate networking, criticism of management, and general unhappiness with her role at the company. (*See id.* Exs. DX 2 at 133:20-134:13; DX 3 at 83:16-90:25; DX 11 at 2-4.) For instance, Bulkley received complaints that Plaintiff discussed her resume with internal Time Warner clients and inappropriately distributed her resume to clients and colleagues. (*Id.* Exs. DX 3 at 166:2-7, 223:9-16; DX 11 at 2.) Bulkley also received complaints that Plaintiff was

---

[3] Plaintiff makes several evidentiary objections to statements made by colleagues and clients – including Duffy's assessment of Plaintiff and complaints about Plaintiff's behavior. (*See* Pl. Reply 56.1., dated Nov. 8, 2011, Doc. No. 66 ("Pl. Reply 56.1") at ¶¶ 58, 73-77, 80-85, 152, 157, 160, 162-63.) The Court addresses those objections *infra*. (*See* Section III.)

3

"bad-mouthing" management and making negative comments about her supervisors. (*Id.* Ex. DX 3 at 89:3-90:3, 95:23-96:25, 166:8-24.) At one point Spencer told Bulkley that Plaintiff's "negativ[ity] w[ith] the team is impacting morale and needs to stop." (*Id.* Exs. DX 4 at 122:8-123:16, 125:12-18, 179:9-180:20; DX 11 at 3.)

Around March 19, 2007, Karickhoff and Bulkley met with Plaintiff to discuss the complaints they had received concerning Plaintiff's negative attitude and job search. (*Id.* Exs. DX 2 at 133:3-134:22; DX 10 at 4.) Nevertheless, complaints about Plaintiff persisted. On March 30, 2007, Spencer wrote an email to Bulkley telling her that:

> [Plaintiff] is accelerating her job search . . . . Frankly, we are at the point where we hope she either finds another opportunity or accepts T[ime] W[arner] and changes her behaviour [sic]. Her current actions adversely impact the morale of my team – something that I'm already trying hard to improve/address.

(*Id.* Ex. DX 14 at 9.) Bulkley continued to receive complaints about Plaintiff's negativity and difficult behavior throughout April 2007. (*See id.* Ex. DX 3 at 87:2-25, 112:5-22, 114:5-18.)

### 3. Plaintiff's Approval of Norma Mero's Maternity Leave

In April 2007, Plaintiff again clashed with Karickhoff and Bulkley, this time regarding Plaintiff's handling of Mero's maternity leave. Specifically, in late 2006, Plaintiff arranged for Mero to work remotely while she was on maternity leave so that Mero could avoid being forced to take unpaid leave. (*Id.* Ex. DX 19 at 1.) Plaintiff did not consult Karickhoff, her supervisor at the time, to approve the arrangement, although Plaintiff insists that there was no written policy that required her to obtain approval for the arrangement. (*Id.* Exs. DX 2 at 69:7-23, 149:4-8; JX 8 at 7-8.) When Bulkley and Karickhoff found out that Plaintiff had made these arrangements with Mero, they testified that they were concerned that the arrangement violated company policies, short term disability requirements, and/or the Family and Medical Leave Act, and that it was not fair to other similarly-situated employees. (*Id.* Exs. DX 2 147:19-148:8; DX 3 at 107:18-108:15.) They also expressed concern that such a "gradual transition" would not be in Mero's professional interest, as Spencer and Werle had questioned the value of Mero's role in March 2007, before her maternity leave. (*Id.* Exs. DX 2 at 170:20-171:10, 175:17-176:23; DX 3 at 80:10-81:5, 81:17-23.)

On April 27, 2007, Karickhoff and Bulkley met with Plaintiff and Mero and told Mero that they would not approve the arrangement that Plaintiff had endorsed. (*Id.* Exs. DX 3 at 226:4-227:2; DX 5 at 27:15-29:17; DX 10 at 5.) During the meeting, Bulkley also indicated that she wanted to "increase [Mero's] visibility with the Corporate clients who have expressed a lack of awareness regarding Norma's workload and a lack of transparency on how she can add value to the business." (*Id.* Ex. DX 10 at 5.)

### 4. Karickhoff and Bulkley Institute a Performance Improvement Plan

Following the dispute over Mero's maternity leave in April 2007, Karickhoff and Bulkley discussed terminating Plaintiff's employment. (*Id.* Exs. DX 2 at 167:8-25; DX 3 at 73:15-74:6.) However, they decided to give Plaintiff a formal opportunity to change her behavior. (*Id.*) On April 30, 2007, Karickhoff and Bulkley

4

met with Plaintiff to discuss their concerns regarding: (1) her management of Mero's maternity leave; (2) continued feedback from colleagues that Plaintiff was openly soliciting help in connection with her job search and making inappropriate comments about management; and (3) colleagues' complaints that it was difficult to work with Plaintiff because she was not forthcoming or helpful. (*Id.* Exs. DX 2 at 154:18-155:2, 156:18-157:10, 179:18-25; DX 3 at 108:22-109:19; 110:11-111:22; DX 10 at 6-7.) Karickhoff itemized specific ways that Plaintiff needed to address the concerns identified, including keeping a daily log of the matters Plaintiff worked on, as well as the matters Plaintiff assigned to Mero and Ittner; attending bi-weekly meetings and group meetings; submitting administrative matters to Bulkley for review before Plaintiff approved requests; and proactively communicating with managers and colleagues in a transparent manner. (*See id.* Ex. JX 3.)

On May 4, 2007, Bulkley sent Plaintiff an email attaching a written Warning/Performance Improvement Plan ("PIP") summarizing the points discussed at the April 30 meeting. (*Id.*) The PIP required Plaintiff to "demonstrate immediate and sustained improvement [in] the above areas as well as the other areas outlined in [her] 2007 goals and in [her] overall job performance." (*Id.*) The PIP also warned that "[f]ailure to perform [her] duties as outlined and discussed may lead to additional corrective action up to and including termination." (*Id.*)

5. Plaintiff's Discrimination Claim

On June 4, 2007, Bulkley, Karickhoff, and Katie Braham, an employee in Human Resources, received a memorandum from Plaintiff in which she disputed many of the statements in the PIP and asserted, for the first time, the allegation that she was the victim of age discrimination. (*Id.* Ex. JX 4.) Plaintiff pointed to her conversation with Spencer on July 28, 2005, in which Spencer "expressed astonishment" that Plaintiff was 55 years-old, as "the beginning of a dramatic, and ultimately complete, deterioration of [her] working relationship with Harry," and complained that her responsibilities were diminished after that conversation. (*Id.*) Plaintiff also complained that "[her] duties were being reduced and opportunities for growth not provided to [her]" by Karickhoff because of her age. (*Id.*) Plaintiff complained that Karickhoff "repeatedly emphasized the need to provide for Norma's development and professional growth," but "resisted the suggestions [Plaintiff] made for support of [her] own development and professional growth." (*Id.*)

In response to Plaintiff's allegations of age discrimination, Defendant hired an outside lawyer – Katharine Parker of Proskauer Rose LLP – to conduct an investigation into Plaintiff's claims. (*Id.* Exs. DX 2 at 193:22-194:13; DX 3 at 119:19-24, 121:7-9, 121:22-122:8.) As part of that investigation, Parker interviewed thirteen current and former Time Warner employees, and reviewed hundreds of documents. (*Id.* Ex. DX 18 at HC01273-74.) On July 12, 2007, Parker issued her Investigatory Report and Conclusions, finding that "after a thorough investigation into [Plaintiff's] allegations, . . . we conclude that there is no basis for finding that any changes to [Plaintiff's] job have be[en] motivated by age animus, that she has been denied opportunities because of her age or that she has been discriminated against in any respect." (*Id.* Ex. DX 18 at HC01272.)

5

6. Plaintiff's Performance after the PIP

Although Plaintiff followed the guidelines imposed by the PIP, Plaintiff's supervisors continued to receive complaints about her. On June 28, 2007, Tai Terry, another attorney in the Legal Department, complained to Bulkley about her interaction with Plaintiff, in which Plaintiff was "passive aggressive" and unhelpful. (*Id.* Ex. DX 11 at 6.) On July 12, 2007, Spencer forwarded Bulkley an email exchange between himself and Plaintiff complaining that Plaintiff did not provide him with substantive legal advice, and instead suggested that he follow up with a third party. (*Id.* Exs. DX 10 at 10; DX 14 at 10.)

On July 19, 2007, Karickhoff and Bulkley met with Plaintiff to provide her with formal feedback on her progress in areas identified in the PIP. (*Id.* Ex. DX 10 at 10-12.) They relieved Plaintiff of some of the PIP's requirements (Eisenberg Aff. Ex. PX 4 at 212:23-214:12; Grossbard Decl. Ex. DX 10 at 10), but informed Plaintiff that she still needed to improve in others, including "[p]roactive and [t]ransparent communications," "belabor[ing] points that have already been addressed," "identifying when a project requires review by additional internal stakeholders," "interface[ing] with your clients and proactively address[ing] concerns directly with those individuals in a constructive manner," "complaining about your current workload, expressing that you don't have relationships with your clients and generally expressing your displeasure with your position," and "demonstrat[ing] [] poor judgment" (Grossbard Decl. Ex. DX 10 at 10-12).

Nevertheless, after the July 19 meeting, Karickhoff and Bulkley received additional complaints about Plaintiff's behavior from Spencer, Werle, and Kathleen Harris, a Global Benefits employee who reported to Werle. (*Id.* Ex. DX 3 at 264:10-266:6.) Following the July 19 meeting and further complaints, Karickhoff decided to terminate Plaintiff. (*Id.* Ex. DX 2 at 211:18-212:4.) On August 6, 2007, Karickhoff, Bulkley, and Braham met with Plaintiff to inform her that she was being terminated. (*Id.* Ex. DX 10 at 13.)

B. Procedural History

On January 30, 2008, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC"), alleging discrimination based on age and gender in violation of Title VII and the ADEA. (Compl. ¶ 8.) The EEOC issued a notice of right to sue letter on May 8, 2009. (*Id.*)

Plaintiff initiated the present action on July 23, 2009, and filed an Amended Complaint on October 5, 2009. Defendant filed a motion to dismiss Plaintiff's Amended Complaint on November 6, 2009, which the Court subsequently denied. *See Wolf v. Time Warner, Inc.*, No. 09 Civ. 6549 (RJS), 2011 WL 856264 (S.D.N.Y. Mar. 3, 2011) (denying Defendant's motion but noting that "Plaintiffs['] claims are [not] necessarily strong ones [since] . . . the facts alleged in the Complaint support equally or perhaps more plausible, non-discriminatory bases for Plaintiff's termination"). On March 10, 2011, Defendants filed an answer to the Complaint, asserting twelve affirmative defenses. (Answer, Doc. No. 34, 11-13.) Defendant's eighth affirmative defense was that "[a]ll or part of plaintiff's claim is barred by the after-acquired evidence doctrine." (*Id.* at 12.)

On October 7, 2011, Plaintiff filed her motion for summary judgment on Defendant's eighth affirmative defense. On the same day, Defendant filed its motion for summary judgment with respect to all of

6

Plaintiff's claims. The motions were fully submitted on November 23, 2011.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a court may not grant a motion for summary judgment unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court "is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted); *accord Anderson*, 477 U.S. at 248. As such, "if there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).

"[B]ecause direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence," courts must exercise "an extra measure of caution" in determining whether to grant summary judgment in cases involving allegations of employment discrimination. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006). Nonetheless, "[s]ummary judgment is appropriate even in discrimination cases." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citations omitted). Thus, "a plaintiff [in a discrimination case] must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The ultimate test remains "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

## III. EVIDENTIARY ISSUES

As an initial matter, Plaintiff objects to the Court's consideration of several statements on the grounds that the statements are inadmissible hearsay or improperly authenticated business records. The statements at issue include complaints about Plaintiff lodged by clients and colleagues (Pl. Reply 56.1 at ¶¶ 73-77, 80-85, 152, 157, 160, 162-63), and Duffy's pre-departure assessment of Plaintiff (*id.* ¶ 58). The Court disagrees that the complaints are inadmissible hearsay because they are not offered for the truth of the matter asserted; rather, they are offered to demonstrate that Plaintiff's supervisors received complaints about Plaintiff's behavior and conduct. *Cf. Woodard v. TWC Media Solutions, Inc.*, 09-cv-3000 (BSJ) (AJP), 2011 WL 70386, at *6 (S.D.N.Y. Jan. 4, 2011) (rejecting plaintiff's argument that statements by clients regarding her performance were inadmissible hearsay because "[t]hey are not being offered for the truth of their contents but, rather, for the fact that they were made"); *Weiss v. JPMorgan Chase & Co.*, No. 06 Civ. 4402 (DLC), 2008 WL 216619, at *7 (S.D.N.Y. Jan. 22, 2008) (rejecting plaintiff's objections to consideration of colleagues' complaints and evaluations because "[n]one of the comments to which [plaintiff] objects are offered into evidence by [defendant] to prove the truth of the matter asserted. . . . [r]ather, they are offered to demonstrate that members of the . . . team complained about [plaintiff], and their state of mind in lodging such complaints, as well as the state of mind of

7

[plaintiff's] superiors upon hearing these complaints"), *rev'd on other grounds*, 332 Fed. App'x 659 (2d Cir. 2009).

The Court further finds that Duffy's assessment of Plaintiff is admissible for the "non-hearsay" purpose of establishing that Plaintiff's supervisors legitimately believed that Plaintiff had a history of questionable judgment and, at times, lacked professionalism. *See Vahos v. Gen. Motors Corp.*, 06-CV-6783 (NGG) (SMG), 2008 WL 2439643, at *4 (E.D.N.Y. 2008) (admitting an investigatory report in support of defendant's summary judgment motion when the report was not offered to "prove that [plaintiff] actually acted improperly, but to prove that the [defendant] decision-makers . . . legitimately believed that he had so acted"); *see also Wolf v. Brown*, 128 F.3d 682, 685 (8th Cir. 1997) ("In employment discrimination cases, internal documents relied upon by the employer in making an employment decision are not hearsay as that term is defined in Fed. R. Evid. 801(c) . . . . [S]uch documents are relevant and admissible because they help explain (or may help explain) the employer's conduct.").

Plaintiff also objects to the Court's consideration of talking points and notes made by Bulkley and Karickhoff in connection with various meetings with Plaintiff to discuss her performance or conversations they had with others regarding Plaintiff. Plaintiff argues that these materials are unsworn statements and cannot be presumed to reflect what was said during those meeting. (Pl. Reply 56.1 ¶¶ 66, 67, 97, 103, 106, 155.) However, Defendant submitted declarations from both Karickhoff and Bulkley that establish the talking points and notes as business records and swear that the substance – if not the literal words – of the talking points were covered at the meetings. *See* Fed. R. Evid. 803(6); *United States v. Kaiser*, 609 F.3d 556, 575 (2d Cir. 2010) (discussing business records exception requirements that records be kept in the course of a regular business activity and that records be regularly kept); (*see also* Decl. of Brenda C. Karickhoff, dated Oct. 7, 2011, Doc. No. 53; Amended Decl. of Kimmberly M. Bulkley, dated Nov. 23, 2011, Doc. No. 75). As Plaintiff does not otherwise deny the substance of the statements at issue, those statements are deemed undisputed facts. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

Accordingly, Plaintiff's objection to the evidence referenced above is overruled.

## IV. DISCUSSION

Because Plaintiff has not presented any direct evidence of discriminatory animus,[4] the Court will review Plaintiff's claims under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

In the first step of this framework, the employee bears the burden of setting forth evidence sufficient to support a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. To do so, a plaintiff must show (1) membership in a protected class, (2) that she was performing her duties satisfactorily, (3) that she was discharged, and (4) that her discharge occurred under circumstances that give rise to an inference of discrimination on the basis of

---

[4] The Second Circuit has noted that "direct evidence" in this sense would roughly equate to a "smoking gun" indicating that a plaintiff's firing was discriminatory, and that such evidence is typically unavailable in employment discrimination cases. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 76 (2d Cir. 2001). The Court finds no such evidence in the record in this case.

her membership in that class. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). The plaintiff's burden at this stage is *de minimis*. *Weinstock*, 224 F.3d at 42.

If the plaintiff is able to establish a *prima facie* case, the burden then shifts to the defendant to produce evidence that the adverse action was taken for a "legitimate, nondiscriminatory reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)) (internal quotation marks omitted). At this step, however, a defendant "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254.

If the defendant articulates a nondiscriminatory explanation for the employment action, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson v. Cty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Burdine*, 450 U.S. at 253). To create a material issue of fact and defeat a motion for summary judgment, a plaintiff is required to produce "not simply *some* evidence, but sufficient evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock*, 224 F.3d at 42 (2d Cir. 2000) (internal quotation marks omitted, emphasis added); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (holding that a claimant bringing suit under ADEA must demonstrate that age was a "but-for" cause of adverse action). In determining whether the articulated reason for the action is a pretext, "a fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable. Rather, the inquiry is directed toward determining whether the articulated purpose is the actual purpose for the challenged employment-related action." *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170-71 (2d Cir. 1993); *see also Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir. 1998) ("[T]he ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their age."). In other words, "a reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515. At all times, the plaintiff has the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her on the basis of a protected characteristic. *Id.* at 510-11.

In this case, Plaintiff's claims must fail. Even assuming that Plaintiff has adduced sufficient evidence to support a *prima facie* case of age and age-plus-gender discrimination, she cannot show that Defendant's proffered non-discriminatory reasons for her termination were pretextual.

A. Discrimination Claims

Title VII of the Civil Rights Act of 1964 provides that it is unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Accordingly, the "*sine qua non* of a . . . discriminatory action claim under Title VII is that 'the discrimination must be *because of*'" the employee's protected characteristic. *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (quoting *Leibovitz v.*

*N.Y. City Transit Auth.*, 252 F.3d 179, 189 (2d Cir. 2001)).

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A Plaintiff in an ADEA action must plausibly plead, *inter alia*, that the circumstances surrounding an adverse employment action give rise to an inference of age discrimination. *See Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010).[5]

Assuming, *arguendo*, that Plaintiff has met her *de minimis* burden in establishing a *prima facie* case of discrimination, Defendants are nevertheless entitled to summary judgment because Plaintiff is unable to demonstrate that Defendant's proffered non-discriminatory reasons for her termination – namely, her negative attitude and questionable judgment – were pretextual.

### 1. Defendant's Legitimate Non-Discriminatory Reason

A defendant must come forward with "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509 U.S. at 507. It is unquestionably an employer's prerogative to terminate an employee for "unprofessional conduct," "poor attitude," and lack of "interpersonal skills." *See Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 508 (S.D.N.Y. 2010); *Galimore v. City Univ. of N.Y. Bronx Cmty. Coll.*, 641 F. Supp. 2d 269, 277-78 (S.D.N.Y. 2009). Furthermore, "insubordination, or disruptive behavior in the workplace" are legitimate reasons for firing an employee. *Hartley v. Rubio*, 785 F. Supp. 2d 165, 179 (S.D.N.Y. 2011). In this case, Defendant has clearly met its burden. The record is replete with evidentiary support for Defendant's position that Plaintiff was terminated because of her questionable professional judgment and her repeated difficulties interacting with colleagues and supervisors.

Although there is no dispute that Plaintiff is a competent benefits attorney, the objective record shows that throughout Plaintiff's tenure at Time Warner she displayed resistance to supervision and management, engaged in disruptive behavior that affected team morale, and made questionable judgment calls. (*See, e.g.*, Grossbard Decl. Exs. DX 3 at 83:16-24, 166:2-7, 223:9-16; DX 11 at 2-4.) Plaintiff's supervisors received numerous complaints about Plaintiff's conduct and attitude, including her open dissatisfaction with her current job, her search for a new job, and her hostility towards colleagues. (*See id.*) Some of these complaints specifically mentioned that Plaintiff's conduct was affecting team morale

---

[5] As the Court noted in its Memorandum and Order denying Defendant's motion to dismiss, a discrete unlawful employment practice is only actionable if an individual files a charge with the EEOC within 300 days of the occurrence of the practice. *See Wolf*, 2011 WL 856264, at *5 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)). Plaintiff filed her Complaint with the EEOC on January 30, 2008, so any claim based on allegedly discriminatory events occurring before April 5, 2007 is time barred. *Wolf*, 2011 WL 856264, at *5. However, an employee may use prior acts, even if they are time-barred, "as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113. Under the NYCHRL, the time limit is three years. N.Y.C. Admin. Code § 8-502(d). Accordingly, older events can be taken into consideration with regard to Plaintiff's claims under the NYCHRL.

throughout the Company. (*See id.* Ex. DX 4 at 122:8-123:16, 125:12-18, 179:9-180:20.) While at times Plaintiff got along well with colleagues and supervisors, the record indicates that the relationship between Plaintiff and her supervisors was often tense, bordering on adversarial. (*See, e.g.*, *id.* Exs. DX 13 at 25, 31, 34; JX 3.)

Clearly, Defendant has proffered reasons for Plaintiff's termination that, "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509 U.S. at 507. Accordingly, the "presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture," and the burden shifts back to the plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock*, 224 F.3d at 42.

### 2. Plaintiff's Evidence of Pretext

Plaintiff posits that Defendant's proffered non-discriminatory reasons for her termination were pretextual for three reasons: (1) Defendant diminished Plaintiff's responsibilities after Spencer discovered the "anomaly" of Plaintiff's age; (2) Defendant's stated reasons for imposing the PIP were "false and overblown"; and (3) Defendant's treatment of other similarly-situated women indicate that Plaintiff's termination was discriminatory. However, for the reasons articulated below, the Court finds that Plaintiff has provided no evidence to refute Defendant's legitimate non-discriminatory reason for her termination.

Plaintiff claims that the reasons for her termination were pretextual because her responsibilities were diminished "only after Spencer discovered the 'anomaly' of [Plaintiff's] age," and "not because of any alleged 'restructuring' of Global Benefits." (Pl. Opp'n at 18.) The record plainly belies this assertion. Spencer hired Werle in May 2005, several months before he discovered Plaintiff's age. (Grossbard Decl. Exs. DX 1 at 517:5-8; DX 4 at 45:13-18.) Plaintiff herself admits that her responsibilities began to change "once Dawn [Werle] came on board." (*Id.* Ex. DX 17 at 5.) Furthermore, it is not at all clear that Plaintiff's duties were even diminished. Plaintiff supports her argument only by asserting her personal belief or "understanding" that her duties were diminished. (Eisenberg Aff. Ex. PX 2 at 527; *see* Pl. Reply 56.1 ¶ 38.) While the record indicates that Plaintiff's duties shifted away from business negotiations to legal work after Werle was hired, the record also indicates that Plaintiff continued to perform the duties for which she was hired and that Spencer continued to solicit Plaintiff's legal advice. *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (noting that a "materially adverse" employment action must amount to more than "a mere inconvenience or an alteration of job responsibilities"). Finally, even if Plaintiff could establish that the change in her responsibilities under Spencer was pretextual, she has not elicited evidence to suggest that the changes in her working relationship with Spencer were "because of" Plaintiff's age or sex. Indeed, the mere acknowledgement of Plaintiff's age within the context of a complimentary remark is insufficient to establish causation or pretext for Plaintiff's subsequent termination.

Plaintiff also claims that "[t]he stated rationale for the PIP is overblown and false," and that, "[a]bsent a legitimate basis for disciplining [Plaintiff,] . . . it is plain that Time Warner has asserted pretextual justifications seeking to mask its discriminatory motives." (Pl. Opp'n at 19-21.) Again, Plaintiff's personal belief is simply contradicted by the undisputed

11

evidence. (*See, e.g.*, Pl. Reply 56.1 ¶¶ 72-77.) The record indicates that Karickhoff and Bulkley imposed the PIP after a series of complaints about Plaintiff and Plaintiff's questionable judgment in handling Mero's maternity leave. Notably, Plaintiff does not dispute the fact that complaints about her behavior were made. (*See id.*) Rather, she asks the Court to disregard the complaints as hearsay or disagrees with the substance of the complaints. (*See id.* ¶ 111.) For the reasons already stated, the Court rejects Plaintiff's hearsay argument. Moreover, Plaintiff's disagreement as to the substance of the complaints does not raise an issue of material fact. (*See* Pl. Opp'n at 19-21.) Without more, "[Plaintiff's] disagreement with [Defendant] over whether her behavior was inappropriate does not show that [Defendant's] stated reasons for terminating her were not [its] true reasons." *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 117 (2d Cir. 2010). Indeed, Plaintiff has not presented any evidence apart from her subjective disagreement to suggest that the complaints were "misdirected or unfounded," *Weiss*, 2008 WL 216619, at *8, and the fact that the complaints were made and documented *before* Plaintiff's assertion of discrimination – which was first raised in June 2007 – wholly undermines Plaintiff's argument that Defendant lacked a "legitimate basis for disciplining [her]," (Pl. Opp'n at 21).

Indeed, Plaintiff admitted that she mishandled Mero's maternity leave (*see* Grossbard Decl. Ex. JX 3), and her contention that she did not violate a *written* policy is of no moment. Whether or not Defendant had a written policy governing the procedures for approving maternity leave has no bearing on whether Plaintiff's supervisors believed that Plaintiff exercised poor judgment in singlehandedly approving a non-traditional maternity leave plan that could potentially expose Defendant to liability under the FMLA.

Similarly, Plaintiff's claim that the "PIP requirements did not relate to the criticism leveled against her" is simply not supported by the evidence. (Pl. Opp'n at 20.) The record indicates that the points imposed by the PIP were directed at monitoring Plaintiff's relationships with colleagues and clients and reassuring her supervisors that Plaintiff was exercising appropriate judgment in her professional activities – the focus of nearly all the complaints and a source of significant concern for her supervisors. As such, there is ample evidence of Plaintiff's legitimate, non-discriminatory reasons for disciplining and later firing Plaintiff, and virtually no evidence of pretext to rebut those stated justifications.

In any event, even if Plaintiff *could* show that Defendant's decision to discipline and terminate her was incorrect or improper, which she has not, this would be immaterial as long as the decision to terminate Plaintiff was not based on discriminatory animus. *Lowe v. Commack Union Free Sch. Dist.*, 886 F.2d 1364, 1375 (2d Cir. 1989). Indeed, a court "does not sit as a super-personnel department" to review employers' decisions. *Martin v. MTA Bridges & Tunnels*, 610 F. Supp. 2d 238, 251 (S.D.N.Y. 2009) (quoting *Scaria v. Rubin*, 117 F.3d 652, 654-55 (2d Cir. 1997). Consequently, Plaintiff may not merely allege discrimination – she "must provide the Court with evidence of such discrimination." *Weiss v. Morgan Stanley Inv. Mgmt.*, No. 05 Civ. 3310 (GBD), 2008 WL 821813, at *5 (S.D.N.Y. Mar. 27, 2008). Aside from Spencer's offhand remark about Plaintiff's youthful appearance, Plaintiff has proffered nothing to suggest that the PIP or the complaints that preceded it were motivated by animus toward Plaintiff's age.

Finally, Plaintiff challenges Defendant's assertion that it "'offered exceptional opportunities for women, regardless of their age'" and dismisses the fact that Karickhoff herself is a woman in her forties. (Pl. Opp'n at 21 (citing Def. Br. at 11-12).) While Plaintiff is correct that "[t]he proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable," *Danzer v. Norden Sys.*, 151 F.3d 50, 55 (2d Cir. 1998), the fact remains that Plaintiff simply has not offered evidence to show that Karickhoff terminated Plaintiff for discriminatory reasons. Plaintiff's only evidence of a "pattern of discrimination" against older women in the Legal Department at Time Warner is her assertion that Susan Waxenberg, a female attorney over the age of forty, experienced discriminatory treatment, and that another attorney, Donna DeGrandi, complained of discriminatory treatment. (Pl. Opp'n at 15-17.) However, Waxenberg testified that she left Time Warner voluntarily and did not experience discrimination, and Plaintiff has presented no evidence to suggest that DeGrandi's termination was discriminatory. (*See* Def. 56.1 ¶ 177; Pl. 56.1 Reply ¶¶ 232, 234.) In fact, the record indicates that, at the time Plaintiff was terminated, more than half of the lawyers in Time Warner's Legal Department were female; more than a third of the female lawyers were over age 40; half of the women over 40 held senior titles; and twelve of the fourteen attorneys reporting to Karickhoff were women. (Def. 56.1 ¶¶ 169-171; Pl. 56.1 Reply ¶¶ 169-171.) The mere fact that Plaintiff happened to be the oldest female employee in the department does not establish that her termination was motivated by age or age-plus-gender. *See Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 115-16 (S.D.N.Y. 2009) ("[E]ven if [plaintiff] were the oldest nursing assistant at the time of her termination, that fact, standing alone, would not provide a sufficient basis to infer that [defendant] has a bias against older employees.").

Although Plaintiff clearly disagrees with Defendant's assessment of her strengths and its ultimate decision to terminate her, Plaintiff simply has not "shown *both* that [Defendant's legitimate non-discriminatory] reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515. Accordingly, Plaintiff does not raise any genuine issue of material fact that could "reasonably support[] a finding of prohibited discrimination" with regard to her termination. *Bernard v. J.P. Morgan Chase Bank N.A.*, No. 08 Civ. 4784 (THK), 2010 WL 423102, at *7, 11 (S.D.N.Y. Feb. 5, 2010). Accordingly, Plaintiff's claim of unlawful termination must fail.

### B.  Retaliation Claim

The *McDonnell Douglas* burden-shifting standard also applies to Plaintiff's retaliation claim. *Galimore*, 641 F. Supp. 2d at 287. Given that the complaints about Plaintiff's performance *and* the institution of the PIP predated Plaintiff's allegation of discrimination, it is doubtful that Plaintiff could put forth a *prima facie* case of retaliation. *See, e.g.*, *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp. 2d 355, 373-74 (S.D.N.Y. 2011) (finding that plaintiff had not made out a *prima facie* case of retaliation when she received a "long string of negative evaluations" seven months before she began to participate in protected activity).

In any event, as discussed above, Plaintiff cannot show that Defendant's proffered legitimate, non-discriminatory reasons for terminating Plaintiff were a pretext for retaliation. *See, e.g., Fleming*, 371 F. App'x at 117 ("[Plaintiff's] retaliatory termination claim fails because, even if she can show a prima facie case of retaliation, defendants have put forth a legitimate, non-discriminatory reason for her termination, and [plaintiff] has not responded with facts sufficient to warrant a reasonable jury finding by a preponderance of the evidence that [the reason was pretext for retaliation]."). To the contrary, Plaintiff's wholesale reliance on the timing of her termination relative to the conclusion of the investigation is not sufficient to establish retaliation. *See Domb v. Metro. Life Ins. Co.*, No. 01 Civ. 10074 (GEL), 2003 WL 21878784, at *9 (S.D.N.Y. Aug. 7, 2003) (granting summary judgment for defendant and finding no retaliation when plaintiff was fired on the same day as conclusion of investigation into her discrimination complaint, when complaint followed performance warnings to plaintiff).

Accordingly, the Court finds that Plaintiff's retaliation claim must also fail.

C. New York City Human Rights Law

For the same reasons that it prevails on the Title VII and ADEA claims, Defendant is also entitled to summary judgment on Plaintiff's NYCHRL claims.

Though Title VII, the ADEA, and the NYCHRL contain equivalent language concerning discrimination, the Local Civil Rights Restoration Act of 2005 demands a more liberal construction of the city law "for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal . . . civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed." N.Y.C. Local L. No. 85 § 7 (2005) (noting that similar federal statutes may provide only "a floor below which the [NYCHRL] law cannot fall," *id.* § 1). Consequently, the Second Circuit has cautioned against coterminous treatment of the statutes, *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278-79 (2d Cir. 2009), and the Appellate Division, First Department has held that the NYCHRL "explicitly requires an independent liberal construction analysis in all circumstances, even where state and federal civil rights laws have comparable language," *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 31 (N.Y. App. Div. 2009).

Yet despite this broader standard of review, "[a]ge discrimination claims brought pursuant to the . . . NYCHRL are analyzed under the ADEA framework, just as gender discrimination claims brought pursuant to the . . . NYCHRL are analyzed under the Title VII framework." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509 n.1 (2d Cir. 2009) (citations omitted). Accordingly, NYCHRL claims are analyzed under the same *McDonnell Douglass* burden-shifting framework as Title VII and ADEA claims. *See, e.g.*, *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010); *Moccio v. Cornell Univ.*, --- F.Supp.2d ----, 2012 WL 3648450, at *37 (S.D.N.Y. Aug. 27, 2012) (collecting cases). Thus, for the same reasons that Plaintiff failed to establish pretext under Title VII and the ADEA, and because the parties have provided no briefing as to why the standard or result under the NYCHRL should differ, Plaintiff's claims under the New York City Law fail as well.

D. Plaintiff's Motion for Summary Judgment

Plaintiff moves to strike Defendant's eighth affirmative defense asserted in its Answer to Plaintiff's Amended Complaint. Because the Court did not consider this

14

affirmative defense in granting Defendant's motion for summary judgment, Plaintiff's motion is denied as moot.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied. The Clerk of the Court is respectfully requested to terminate the motions located at Doc. Nos. 44 and 49 and close this case.

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/18/2012
```

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: September 17, 2012
      New York, New York

15